UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHONARI WARREN,                    :    **CASE NO. 1:11-CV-2348**
                                   :
           Petitioner              :    (Judge Rambo)
                                   :
      v.                           :    (Magistrate Judge Smyser)
                                   :
                                   :
DEBRA SAUERS,                      :
                                   :
           Respondent              :


**<u>REPORT AND RECOMMENDATION</u>**


**<u>Background and Procedural History</u>**.

        This 28 U.S.C. § 2254 habeas corpus petition is brought

by a state prisoner, Shonari Warren, to challenge his

convictions in the Court of Common Pleas of Dauphin County in

2005.  He was convicted of the first degree murder of Leonard

Smith.  He was convicted also of the attempted murder of George

Miller.  He was convicted of two counts of robbery and of

aggravated assault.  He was convicted of carrying a firearm

without a license and of unlawful restraint.  The offense

conduct leading to these convictions was an armed robbery of

Leonard Smith and George Miller in the early morning hours of

January 24, 2003.  Smith and Miller were delivering heating oil

to residential customers in the City of Harrisburg.  Upon

resistance to the robbery, Leonard Smith was shot and was

killed, and George Miller was shot in the arm.  Shonari Warren,

the petitioner, was arrested, charged, tried by a jury and

convicted of the charged offenses.  He was sentenced to life in

prison.  He was sentenced to a consecutive cumulative term of

28 years to 56 years.

     There was a direct appeal to the Superior Court of

Pennsylvania claiming that the evidence was not sufficient to

support the jury's verdict.  The judgment of conviction was

affirmed by the Superior Court.

     There was a Post Conviction Relief Act ("PCRA")

petition filed.  The grounds raised were that trial counsel had

not been effective, that there had been prosecutorial

misconduct and that there had been a judicial abuse of

discretion.  Other grounds were also presented.  The trial

court denied the PCRA petition.  An appeal was taken to the

Superior Court of Pennsylvania.  One issue was presented on

appeal to the Superior Court, whether trial counsel had been

ineffective in deciding not to ask the trial court to suppress

putative testimony from George Miller identifying the

petitioner as the person who had robbed and shot Leonard Smith

and him in the early morning hours of January 24, 2003.  The

Superior Court denied the appeal.


        A petition to the Pennsylvania Supreme Court to allow

an appeal has been taken by the petitioner and is pending

before that court.


**The Factual History**.

        The PCRA court's statement of the factual history of

this case was adopted by the Superior Court of Pennsylvania.

We also adopt that factual history for purposes of this Report

and Recommendation.

> On October 3-11, 2005, a capital jury
> trial was held before this court. Attorney John
> B. Elbert, Esq., represented [Petitioner] at
> trial. The evidence during the guilt phase
> established the following facts: On Friday,
> January 24, 2003, at approximately 2:30 a.m.
> Officer William Kimmick and Lieutenant Annette
> Books of the Harrisburg Police Department were
> dispatched separately for a report of a robbery

in progress in the 200 block of Hamilton
Street. Lieutenant Books arrived at the scene
first and was flagged down by George Miller,
who had been bleeding and holding his left
shoulder. Lieutenant Books immediately called
for an ambulance, and Mr. Miller was
transported to Harrisburg Hospital where he was
treated for a gunshot wound to the forearm.
Seconds later Officer Kimmick arrived at the
scene, where he met Scott Wilson and Matthew
Richmond, who pointed the officer to Leonard
Smith ["the decedent"] who was lying on the
sidewalk after being shot. Officer Kimmick
summoned an ambulance, which arrived within
minutes to transport [the decedent] to
Harrisburg Hospital, where he was pronounced
dead, with the cause of death later being
determined as multiple gunshot wounds to the
abdomen and leg. Mr. Wilson and Mr. Richmond
testified that they were parking outside of
their residence at 207 Hamilton Street, when
George Miller ran up to their car saying "we
are being robbed, call 911." Mr. Wilson made
the call to 911, and he and Mr. Richmond
observed two men "scuffling" and heard gunshots
and could see "muzzle flashes[.]" They then
observed the shooter, a person with a dark coat
with a furry hood, flee the scene and head
towards Green Street.

    Victim George Miller testified that when
the incident took place in the early morning
hours of Friday, January 24, 2003, he and [the
decedent] were delivering oil to 230 Hamilton
Street, when [Petitioner], wearing a large
hooded parka, approached [the decedent] with a
silver gun and told him that he wanted money.
[The decedent] refused to give [Petitioner]
money, and the two victims and [Petitioner] got
into a scuffle. [Petitioner] broke away, shot

4

Miller in the arm, and fired multiple shots at [the decedent].

On February 6, 2003, Harrisburg Police Department Detective Kevin Duffin went to Miller's home and showed him a group of photographs. Miller immediately picked out [Petitioner's] photo and told the detective that [Petitioner] was the man who had robbed and shot him and killed [the decedent].

Nicole and William Brown both testified that they had lived in the same house as [Petitioner] on Green Street, and that on the night of the shooting they heard gunshots sometime around 2:30 a.m. Shortly after hearing the gunshots, [Petitioner], wearing a black Rocawear coat with fur around the hood, returned home and told the couple that he had tried to rob and then shot the oil delivery men because they would not give up any money. William Brown testified that later that day in the bathroom that the Brown's [sic] shared with [Petitioner], he found a bullet left in the toilet, which he took and wrapped up and put in his bedroom. Brown later took the bullet and threw it into a grass field around the West Shore Nursing Rehab Center where Nicole Brown worked. The bullet was later recovered by the Harrisburg Police and was determined to be consistent with those recovered from the victim, and at the crime scene.

Additionally, at trial, the Commonwealth produced Gideon Bailey, a federal prison inmate who testified that he and [Petitioner] had a conversation in the Dauphin County Prison law library in which [Petitioner] told Bailey that he did in fact shoot and kill [the decedent].

> Based on the evidence at trial, the jury found [Petitioner] guilty of first-degree murder, attempted murder, aggravated assault, two counts of robbery, carrying a firearm without a license, and unlawful restraint. On October 11, 2005, the penalty phase of the trial took place. The jury returned a verdict of life imprisonment on the first-degree murder charge. [The] court then imposed an aggregate sentence on the remaining charges of twenty-eight (28) to fifty-six (56) years in a state correctional institution, to run consecutively to the life sentence.

(Doc. 10-8, pages 52-54)(footnotes omitted).

**Grounds Raised by the Petitioner**.

The petitioner raises five grounds upon which he asserts a right to habeas corpus relief under 28 U.S.C. § 2254. These five grounds are:

1. Entirety of state procedure was ineffective to protect rights of petitioner, when conviction was obtained by unconstitutional failure of prosecution to disclose favorable evidence to defendant.

2. Petitioner was prosecuted without probable cause for arrest or prosecution having been established by due process or under equal protection of the law, in regard to identification of defendant made under such suggestive circumstances as to render mis-identification highly probable, and fair trial impossible.

6

3. Petitioner was denied assistance of counsel virtually, at every critical stage of criminal proceedings against him, from beginning of earliest stages to post-trial and appeals process, when appointed counsels worked directly contrary to and deliberately mis-advised him as to his interest as of right.

4. Petitioner was denied right to fundamentally fair trial when counsel failed to confront and impeach chief commonwealth witnesses against him with their inconsistent and/or false prior statements.

5. The totality of circumstances under which prosecution of petitioner was conducted was ineffective to protect the guaranteed constitutional rights of petitioner, and denied him redress of his grievances by collusive obstruction of his attempts to gain access of the above issues to be heard, through the combined efforts of state judges, prosecutors and appointed counsels to thwart such fair review, as otherwise required by law and the facts, applicable to his cause.

(Doc. 2, page 2).

**The Response**.

The respondent's primary position is that this petitioner had not exhausted any claim that he is now presenting in a 28 U.S.C. § 2254 petition.

7

**<u>28 U.S.C. §2254</u>**.

　　　　The text of 28 U.S.C. § 2254 relating to exhaustion of

state remedies is as follows:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.
>
> (b)(1) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted unless it appears
> that--
>> (A) the applicant has exhausted the remedies
>> available in the courts of the State; or
>>
>> (B)(i) there is an absence of available State
>> corrective process; or
>>
>> (ii) circumstances exist that render such process
>> ineffective to protect the rights of the
>> applicant.
>>
>> (2) An application for a writ of habeas
>> corpus may be denied on the merits,
>> notwithstanding the failure of the applicant
>> to exhaust the remedies available in the
>> courts of the State.
>>
>> (3) A State shall not be deemed to have waived the
>> exhaustion requirement or be estopped from
>> reliance upon the requirement unless the State,
>> through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted
> the remedies available in the courts of the State,

within the meaning of this section, if he has the right
under the law of the State to raise, by any available
procedure, the question presented.

**The Exhaustion Requirement**.

A state prisoner must exhaust available state remedies
before filing a petition for habeas corpus in federal court. 28
U.S.C. § 2254(b) and (c).  This requirement serves the
interests of comity between the federal and state systems by
allowing the state an initial opportunity to determine and
correct any violations of a prisoner's federal rights.
*O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)("Comity . . .
dictates that when a prisoner alleges that his continued
confinement for a state court conviction violates federal law,
the state courts should have the first opportunity to review
this claim and provide any necessary relief.").  "The
exhaustion rule also serves the secondary purpose of
facilitating the creation of a complete factual record to aid
the federal courts in their review." *Walker v. Vaughn*, 53 F.3d
609, 614 (3d Cir. 1995).

A habeas corpus petitioner bears the burden of demonstrating that he has exhausted state remedies. *O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987). In order to exhaust state remedies for federal habeas corpus purposes, a petitioner must show that he has fairly presented his claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 278 (1971). To have been fairly presented to the state courts both the legal theory and the facts supporting the claim must have been presented to the state courts. *O'Halloran*, *supra,* 835 F.2d at 508. Further, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan, supra,* 526 U.S. at 845.

In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254(c). *Lambert v. Blackwell,* 387 F.3d 210, 233 (3d Cir. 2004).

The habeas petitioner must exhaust his state remedies as to each of his federal claims.  If a habeas corpus petition contains both exhausted and non-exhausted claims the petition should normally be dismissed. *See Rose v. Lundy*, 455 U.S. 509, 515-20 (1982).  But an application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the petitioner to exhaust state remedies. 28 U.S.C. §2254(b)(2).

If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused. *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002); *See also McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999)("When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'").  A procedural default occurs when a prisoner's claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. *Id.*  Federal courts may not consider the merits of claims that have been procedurally

defaulted unless the petitioner establishes "cause" to excuse

the default and actual "prejudice" as a result of the alleged

violation of federal law or unless the prisoner demonstrates

that failure to consider the claim will result in a fundamental

"miscarriage of justice." *Id.*

**Discussion**.

The respondent in the Answer to the petition shows that

none of the five claims raised by the petitioner in this

petition have been exhausted in state court.

The petitioner argues in his petition that there is an

absence of state corrective process and that circumstances

exist that render state process ineffective to protect his

rights.  *See* Memorandum in Support of Habeas Corpus, Doc. 2,

pages 1-52.  Then he argues that the five claims raised in this

petition are substantially the same claims as those he did

raise and exhaust in his state court PCRA petition.

But in his PCRA petition, he presented 15 specific

claims of ineffective assistance of counsel and other claims.

12

(Doc. 10-7, pages 2-11).  Counsel was appointed for the

petitioner.  A hearing was held in the trial court.  (Doc. 10-

7, pages 23-70).  The court in its Memorandum Opinion addressed

24 claims.  (Doc. 10-8, pages 2-16).  Only one claim was

presented on appeal to the Superior Court of Pennsylvania.

This one claim was the claim that his Sixth Amendment rights

were violated in that trial counsel was constitutionally

ineffective for failing to file a motion to suppress the

identification testimony of George Miller when the police had

used an unduly suggestive identification procedure with Miller

that had led to a strong possibility of an irreparable

misidentification.  *See* Doc. 10-8, Statement of Question

Presented.  The Superior Court of Pennsylvania decided that

question adversely to the petitioner (Doc. 10-8, pages 52-65)

and a petition to the Pennsylvania Supreme Court for the

allowance of an appeal was filed and remains pending in that

Court.

     The petitioner's pending petition to the Pennsylvania

Supreme Court for the allowance of an appeal upon an issue that

has been exhausted in the Pennsylvania courts is not material

13

to the issue presented here, which is whether a petition
raising five claims that have not been either presented or
exhausted in state court should be dismissed, for failure to
exhaust, pursuant to 28 U.S.C. § 2254(b).  The plain answer is
that this petition must be dismissed for lack of exhaustion.

        None of the claims in this petition has been exhausted.
The claim that is currently pending in the Pennsylvania Supreme
Court has not been exhausted.  Although Order 218 provides that
a petition to the Supreme Court of Pennsylvania to allow an
appeal is not an element of full exhaustion, nothing authorizes
a petitioner to petition for the allowance of an appeal and at
the same time raise the claim that is the subject of that
petition in a 28 U.S.C. § 2254 habeas corpus petition.

**Recommendation**.

It is recommended that the petition for a writ of habeas corpus be dismissed because none of the claims presented in the petition has been exhausted in state court.

                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  May 8, 2012.